UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW HOWARD HALL, | No. 2:22-cv-1722 DJC CKD P |
| Petitioner, | |
| v. | |
| JANAN CAVAGNOLO,[1] | FINDINGS AND RECOMMENDATIONS |
| Respondent. | |

Petitioner is proceeding pro se with a second amended petition for writ of habeas corpus under 28 U.S.C. § 2254. In 2016, a Trinity County jury convicted petitioner of attempted murder, possession of a firearm by a felon and possession of ammunition by a felon. Petitioner was acquitted of assault with a machine gun or assault rifle but found guilty of the lesser included offense of assault with a firearm. ECF No. 25-12 at 1-2. On May 14, 2018, the California Court of Appeal reversed judgment finding that the jury should have been instructed as to imperfect self-defense. ECF No. 25-3 at 7. On remand, the prosecution was allowed to amend the information to include assault with a firearm. ECF No. 25-3 at 2. At the retrial, which concluded on May 17, 2019, petitioner was convicted of attempted voluntary manslaughter and again convicted of assault with a firearm, possession of firearm by a felon, and possession of

---

[1] Warden Cavagnolo is hereby substituted as the respondent in this action pursuant to Rule 2 of the Rules Governing Section 2254 Cases.

1

ammunition by a felon.  ECF No. 21 at 2 & CT 414.  Shortly thereafter petitioner, was sentenced to 18 years and 6 months in prison.  CT 414.

Petitioner presents two grounds for relief.  For the reasons which follow, the court recommends that the second amended petition for a writ of habeas corpus be denied.

I. Background

Following his second trial, petitioner appealed his convictions and sentences to the California Court of Appeal.  ECF No. 25-9.  The Court of Appeal summarized the evidence presented at trial and other relevant facts as follows:

> The victim testified that he and defendant had been doing methamphetamine together, and they had woken up from being asleep when defendant asked him for a light for a cigarette. Defendant was lying down inside a shack with the door open, and the victim was on the ground outside of the shack. The victim had matches inside the handle of his knife.  He unsheathed the knife and then stood up and walked toward defendant.  Defendant had a rifle in his hands and was pointing it at the victim.  The victim went to toss the knife to defendant, telling him to open it, and defendant shot him in the shoulder and arm.  Defendant was about 15 to 20 feet away at the time he fired the rifle.  The victim testified he did not recall doing anything aggressive toward defendant, but he may have threatened him with the knife. The victim had not been taking his medication at the time of the shooting, and when he did not take his medication, it affected his ability to remember things.
>
> James, who also saw the shooting, had previously seen defendant walking around with what appeared to be an AR-15. James testified he saw defendant point the gun at the victim, and then the victim said, " 'Well, if you're going to have that gun, you better use it.' " James said the victim reached for his knife and was pulling it out when defendant shot him.
>
> Law enforcement discovered two spent shell casings in a location consistent with use inside the shack.  Law enforcement also found a rifle and a smaller gun inside the shack.
>
> Unlike in the previous trial, defendant did not testify.
>
> A private investigator testified he had previously interviewed James, and at that time, James said the victim removed his knife from the sheath and had started to raise it when defendant shot him.
>
> The defense offered testimony from a self-defense expert about "the 21-Foot Rule."  The expert testified "the 21-Foot Rule is if you have an officer . . . confronting individuals, if suddenly the individual brandishes a weapon, . . . it takes a distance of 21 feet for the officer

> to react, draw his sidearm and fire."[2]  Further, the individual with the weapon can close the distance in one and a half to three seconds.  If someone is within the 21-foot area with a weapon, the likelihood that someone without a weapon would be injured or killed is 80 to 90 percent.

ECF No. 25-12 at 3-4

Petitioner raised the same two claims he raises here, ECF No. 25-9, and both claims were denied.  ECF No. 25-12.  Petitioner sought review of the Court of Appeal's decision in the California Supreme Court.  ECF No. 25-13.  The petition for review was denied without comment.  ECF No. 25-13.

II. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ of habeas corpus is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.2d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following limitation on the granting of federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;
>
> or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2]  On cross examination, the expert explained that if the gun is already out "it depends on the individual officer.  Some officer[s] will be able to aim the weapon and fire it, some officers will panic, not knowing what to do. . . . [¶]  But if the gun is out, then more likely than not he will be able to fire his weapon."

3

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different, as the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011). Here, the last reasoned decision was issued by the California Court of Appeal. ECF No. 21-12.

III.  Claims and Analysis

  A.  Double Jeopardy and Collateral Estoppel

Petitioner argues that any evidence that petitioner used an assault weapon when shooting the victim should not have been presented in the second trial because he was found not guilty of assault with a machine gun or assault rifle in the first trial.

The California Court of Appeal identified the relevant facts as follows:

> In the prior trial, the jury also heard evidence that law enforcement found two expended casings. Additional evidence showed the casings were consistent with ammunition used in an AR-15-type rifle and their location was "consistent with someone standing in the doorway facing out and shooting outside the doorway." Police also found a .22 rifle, but no corresponding casings. Defendant testified that he grabbed a nearby .22 rifle after the victim had entered the doorway and shot him with it after the victim raised a knife. James testified the gun looked like an M-16.
>
> After we issued our opinion in defendant's prior appeal, an AR-15 was found buried on defendant's neighbor's property. This additional evidence was presented to the jury during the subsequent retrial. Additionally, an investigator employed by the California Department of Justice Crime Lab in Redding opined at the retrial that the two shell casings found at the scene were fired from the recovered AR-15.

ECF No. 25-12 at 4-5.

Under the Fifth Amendment a person cannot be retried for an offense when previously acquitted. U.S. v. DiFrancesco, 449 U.S. 117, 129 (1980). In Currier v. Virginia, 585 U.S. 493, 499 (2018), the Supreme Court reiterated that the Fifth Amendment precludes a second trial "if to secure a conviction the prosecution must prevail on an issue the jury necessarily resolved in the defendant's favor in the first trial."

In this case, however, the California Court of Appeal correctly held that "the issue sought to be precluded in retrial [was] not identical to any issue necessarily decided by the earlier verdict." ECF No. 25-12 at 6. At the first trial, the jury was specifically asked whether petitioner used a particular type of firearm. That question was not asked at the second trial, nor was a finding that petitioner used a particular type of firearm an element of any offense for which petitioner was charged.

After reviewing Supreme Court authority and the record, the court cannot find that the Court of Appeal's denial of petitioner's double jeopardy claim is contrary to or involve an unreasonable application of Supreme Court authority or an unreasonable determination of the facts. It is clear petitioner could not have been convicted at the second trial for assault with a machine gun or assault weapon as petitioner was acquitted of that charge. But petitioner fails to point Supreme Court authority which clearly indicates that his acquittal had to result in exclusion

of evidence which supported the charge of assault with a deadly weapon for which petitioner was convicted in the first trial. As the Supreme Court found in Dowling v. U.S., 493 U.S. 342, 348 (1990), "relevant and probative evidence that is otherwise admissible under the Rules of Evidence [is not always inadmissible] simply because it relates to alleged criminal conduct for which a defendant has been acquitted."

For these reasons, petitioner's first claim must be rejected.

B. Limitation of Defense Evidence

Petitioner also claims that his Constitutional rights were violated by the trial court's limitations placed upon the direct testimony of petitioner's self defense expert. The California Court of Appeal summarized the claim as follows:

> Prior to trial, the prosecution moved to exclude or limit the scope of testimony presented by defendant's self-defense expert. As relevant to this appeal, the prosecution expressed concern that the defense would ask questions that would lead its expert to opine on the ultimate issue of whether defendant was acting in self-defense. The court tentatively ruled that the expert would not be allowed to testify on the ultimate issue of whether defendant was acting in self-defense "because in this case that ultimate question involves a state of mind."
>
> Defense counsel then asked if he could pose "a hypothetical situation that if a person is faced with this, this, this, this and this . . . and he ends up shooting someone, . . . what is your opinion as to his conduct. . . . [¶] And if he says, [']Well, . . . in my opinion, based on the [sic] those facts given, then he would be . . . acting in his self-defense.[']
>
> "THE COURT: I would preclude that. [¶] . . .[¶] And the reason is that's . . . a side door, to get to the same place as asking him . . . did [defendant] act in self-defense. And . . . I'm just simply concluding an expert cannot say that. [¶] And so he can be given a[] hypothetical. And that is, If the following facts were in existence, would Subject A be in danger of— more at danger, or danger of serious injury, from a person with that weapon at that distance. [¶] . . . [¶] And then you guys can argue all over about what the facts are [¶] . . . [¶] or what the motive of [defendant] was. Or what his state of mind was. Because whether we speak of imperfect or perfect self-defense, there must be an actual belief, an honest belief, of the need to defend yourself, whether it's reasonable or unreasonable. [¶] And if, for example, the jurors decide [defendant] didn't have any such belief, reasonable or unreasonable, and although it could fit very well with a hypothetical from this expert, that wasn't [defendant]'s motivation. Or those circumstances were not the actual circumstances. [¶] So you guys can go to all those places, but the expert can't say it for you."
>
> During trial, the court discussed the issue again:

6

> "THE COURT: . . . you cannot capture in a hypothetical the defense view of the facts in this case, and then ask him if a person in that circumstance would be justified in using deadly force. Because that would be basically the same as asking him if that person had that state of mind.
>
> "[Defense counsel]: But he could . . . be asked the questions, . . . if a person, for example, was within 21 feet of an individual and had a fear of being harmed or killed, would he be justified in using deadly force. That's not giving the parameters as to what we have here, but it's giving the parameters as to the 21-Foot Rule.
>
> "THE COURT: I think a way to approach it is to stay away from the specific facts of our case.
>
> "[Defense counsel]: Correct.
>
> "THE COURT: Because you can always argue those in the application of [the expert]'s opinion when it's argument time. But you can ask him his expertise . . . about that zone of danger for somebody from a weapon such as a knife, in terms of physical proximity, if there's no barrier. [¶] . . . [¶] And then, from that, you can make an argument. [¶] . . . [¶] But to say, would that person be justified in using deadly force, that's . . . a whole different issue. That depends on the instructions on the law and jurors' views of the state of mind. [¶] . . . [¶] Because that person might well not be justified in using deadly force, because that person might not have the requisite state of mind." (Italics added.)

ECF No. 25-12 at 8-10.

As indicated by the Court of Appeal, petitioner does not point to any hypothetical questions not permitted by the trial court. Id. at 12. Instead, petitioner "argu[es] vaguely that the trial court 'precluded defense counsel from proffering a full hypothetical question based on the facts of the case' and 'precluded a hypothetical that assumed facts about [defendant]'s time to see and react to [the victim]'s knife being drawn against him.'" Id.

The Constitution affords criminal defendants the opportunity to present a "complete defense." Holmes v. South Carolina, 547 U.S. 319, 324 (2006). However, as indicated above, it is not entirely clear what evidence petitioner believes was improperly restricted. In any case, what is clear is that the trial court was concerned with the expert either rendering an opinion, or appearing to render an opinion, as to petitioner's state of mind which would have not been relevant and, therefore, inadmissible.

Petitioner's failure to sufficiently identify the evidence he feels was improperly excluded

7

renders relief precluded under 28 U.S.C. § 2254(d).  If the court cannot identify the evidence excluded, the court cannot determine whether the exclusion ran afoul of Supreme Court precent.  At this point, Supreme Court precedent does not demand that defendants be given the sort of broad leeway in examination of their own expert witnesses.

IV.  Conclusion

For all these reasons, the court will recommend that petitioner's second amended petition for a writ of habeas corpus be denied, and this case be closed.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Petitioner's second amended petition for a writ of habeas corpus (ECF No. 21) be DENIED; and

2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 4, 2025

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1/hall1722.157